Patrick MORRISON, Petitioner,

v.

Walter KELLY, Superintendent of the Attica Correctional Facility and the New York State Department of Correctional Services, Robert Abrams, John Santucci, Respondents.

No. 88 C 0432.

United States District Court, E.D. New York.

June 22, 1988.

Agulnick & Gogel (William A. Gogel and Leigh W. Bernstein, of counsel), New York City, for petitioner.

John J. Santucci, Dist. Atty., Queens County (Seymour Roth, Asst. Dist. Atty., of counsel), Kew Gardens, N.Y., for respondents.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Patrick Morrison petitions the court for a writ of habeas corpus pursuant to 28 U.S. C. § 2254. Following a jury trial in Supreme Court, Queens County, petitioner was convicted on May 17, 1983 of two counts of second degree murder and one count each of second degree robbery and second degree criminal possession of a weapon. Petitioner was sentenced to concurrent terms of 25 years to life on the murder counts, 8⅓ to 25 years on the robbery count and 5 to 15 years on the possession count. The Appellate Division affirmed, *People v. Morrison*, 116 A.D.2d 672, 497 N.Y.S.2d 740 (1986) and the Court of Appeals denied leave to appeal, 67 N.Y. 2d 887, 501 N.Y.S.2d 1039, 492 N.E.2d 1246 (1986).

On August 20, 1982 Dolphy McPherson was shot and killed in his grocery store at 110–44 Sutphin Boulevard in Queens, New York. Trial testimony suggested that McPherson, who had sold marijuana out of the store, had had a dispute with a rival drug gang and that his slaying was in retaliation for a murder that took place the night before.

Four eyewitnesses to the murder were among those who testified at petitioner's trial.

Carlene McPherson, the wife of the deceased, testified that on the evening in question at about 3:15 A.M. her husband left the store to place two lamps in their

car. He returned to the store for the car keys, but as he entered, a man followed wielding a handgun. The assailant fired two shots and ordered Dolphy to lie on the floor. He demanded money whereupon Carlene threw her pocketbook over a bullet-proof partition that separated her from the assailant and her husband. The gunman then fired two more shots, fatally wounding Dolphy, and ran out. Testifying that she looked at the assailant's face throughout the incident, Carlene identified petitioner as the murderer.

The other three witnesses observed the murder from the area of the Green Door, another establishment where marijuana could be purchased located across the street from the grocery store where the murder took place.

Philip Dennis testified that he was at the Green Door when the shooting took place. For about a half hour he observed a man sitting in a doorway adjacent to the Green Door. He then saw Dolphy McPherson leave the grocery, walk to his car, place down two lamps he was carrying, and walk back into the store. At that point the man in the next doorway rushed in behind Dolphy. Though from his vantage point the man could not actually see into the grocery, he heard four shots fired and saw the person who had followed Dolphy run out of the store. Dennis identified petitioner as that person.

Neville Sikes was also at the Green Door and observed a man walking up and down the street like a "bum." He saw Dolphy leave and re-enter his store. A man followed close behind and fired two shots. Carlene gave him two bags, and Dolphy lay on the ground before the assailant shot him twice and fled. To Sikes, the interior of the well-lit grocery was easily visible from the Green Door. He too identified petitioner as the killer.

Perry Bellamy, also at the Green Door, testified that petitioner whom he had known for two months came to the Green Door and conversed with one "Dred." Bellamy testified as did Dennis and Sikes, that Dred had ordered the killing of Dolphy McPherson. He further testified that peti-

tioner crossed the street and sat in a doorway pretending to be a wino. Dolphy exited the store, put two lamps in his car, saw petitioner, and hurried back inside. Petitioner followed, fired and yelled "freeze." He then shot Dolphy who was lying on the floor, emptied Dolphy's pockets and ran out. Bellamy too testified that the murder was easily visible from the Green Door.

Petitioner claims that the identification testimony of Phillip Dennis was the product of an unduly suggestive photographic identification and therefore should have been excluded. During the trial the court conducted a *Wade* hearing on this issue. The court found that a September 2, 1982 display to Dennis of a photograph of petitioner was unnecessarily suggestive but that Dennis had ample opportunity to view the crime and that his identification of the assailant was independent of the suggestive display of the photograph.

A pretrial identification procedure violates the due process clause of the Fourteenth Amendment, and requires exclusion of testimony based on that procedure if it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The questions are whether the procedure was unnecessarily suggestive and, if so, whether its corrupting influence outweighs the reliability of the identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). While the trial court's historical findings of fact with respect to this issue are entitled to a presumption of correctness, 28 U.S.C. § 2254(d), its conclusions are mixed findings of law and fact that this court may reexamine. *Dickerson v. Fogg*, 692 F.2d 238, 242–43 (2d Cir.1982).

The trial court heard confusing testimony about the session when Dennis and Sikes saw the photograph of petitioner. The session took place about one week after the shooting while Detective Richard Murphy was driving the witnesses in a police car to the precinct. Both Dennis and Sikes testified that they picked petitioner's

picture from at least twelve other photographs. Detective Murphy, on the other hand, could not recall whether he showed them a single photograph, or showed them an array of pictures. The court held no hearing as to Sikes, nor does petitioner challenge his identification testimony. In finding that the procedure was unduly suggestive as to Dennis, the trial court implicitly found that at least initially he saw only one photograph. This court accepts that finding of fact.

There is no evidence in the record that the police used pressure, hints or other tactics that would have exacerbated the degree of suggestion. It appears that they simply asked whether the man depicted committed the murder and received affirmative responses. Nevertheless, the display of a single photograph alone renders the identification session unduly suggestive. *See, e.g., Brathwaite, supra.*

However, an unnecessarily suggestive identification alone is not determinative that a petitioner's due process rights have been violated. The critical question is whether there was "a substantial likelihood of irreparable misidentification." *Simmons, supra,* 390 U.S. at 384, 88 S.Ct. at 971. As the Supreme Court stated in *Brathwaite,* "reliability is the linchpin in determining the admissibility of identification testimony. . . ." 432 U.S. at 114, 97 S.Ct. at 2253. The factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* (citing *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972)).

Unfortunately the *Wade* hearing produced little testimony relevant to these so-called *Biggers* factors because each counsel asserted that the other bore the burden of proof. The trial court, in concluding that Dennis could "retain a clear and definite recollection of the said defendant," relied solely on Dennis' testimony that he observed the man across the street for a half hour.

Petitioner urges that an extended opportunity for observation alone does not satisfy the *Biggers* test, especially because Dennis later admitted to smoking a marijuana cigarette one hour before the shooting, did not know petitioner at the time, observed the shooting from across the street and at nighttime, and gave a description at trial of the defendant that differed significantly from that given by Carlene McPherson.

The court has examined the entire trial record, not simply the sparse testimony adduced at the *Wade* hearing, and concludes that the admission of Dennis' testimony did not violate petitioner's due process rights.

Dennis had a significant and lengthy opportunity to view the person who lurked outside the grocery store before following Dolphy McPherson inside. For a half hour Dennis observed the assailant who faced the Green Door as he sat in the doorway. Although the events transpired at night and Dennis, unlike Sikes and Bellamy, could not actually see into the grocery store, the record shows that events on the sidewalk outside the grocery store could easily be observed. Dennis' description of the events that transpired on the sidewalk before Dolphy reentered the grocery is consistent with the testimony of the three other eyewitnesses, including Sikes who also watched from the Green Door and Bellamy who traced petitioner from the Green Door to the same doorway where Dennis saw him. The testimony of both Sikes and Bellamy indicates that they had no difficulty seeing the man across the street. Any differences in the descriptions given by Carlene McPherson and Dennis are not so unambiguous and serious as to question his ability to observe the man across the street.

Though Dennis admitted to smoking marijuana an hour before the shooting, it is reasonable to infer from the record that his degree of attention was relatively high. It is not likely that Dennis was shocked or frightened by the events, and indeed his eye was probably drawn to the man across

the street, because, as he testified, he knew Dolphy McPherson was to be murdered that night. *Contrast Dickerson, supra,* at 247.

As to the other *Biggers* factors, the record does not indicate what description, if any, Dennis gave before seeing the photograph of petitioner. The photographic session took place only a week after the shooting, thereby permitting the inference that the memory of the shooter was still relatively fresh in Dennis' mind. Finally, there is no indication in the record that Dennis was at all uncertain or hesitant in identifying petitioner either with the police or at trial.

That three other witnesses identified petitioner bolsters the reliability of Dennis' identification. Admittedly, Sikes attended the same suggestive photographic session as Dennis. However, Carlene McPherson, who concentrated on the assailant's face from close range, and Bellamy who had known petitioner for two months both identified him. Under the circumstances, the court finds that the degree of suggestion inherent in the photographic identification session did not so outweigh the reliability of Dennis' testimony as to warrant excluding that testimony from the jury.

■ Even if permitting Dennis to testify was erroneous, the court is satisfied that the error was harmless. An examination of the trial transcript, including the arguments of counsel, shows that the main issue was not whether any of the four eyewitnesses was capable of identifying the defendant but whether, based on the absence at trial of persons at the scene of the crime and the intimacy of Dennis, Sikes, and Bellamy with the drug rivalry that led to McPherson's death, there was reason to believe that these three witnesses committed perjury to protect someone else. The jury resolved these issues against petitioner, and Dennis' identification testimony could not reasonably have affected the verdict. *See, e.g., Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Petitioner urges that the prosecutor violated the rule announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by not turning over the criminal records of Dennis, Sikes and Bellamy as well as prior recorded statements of Bellamy.

The record indicates that the criminal records of the three witnesses were raised by the prosecutor and explored thoroughly by the defense on cross-examination. After much haggling, the recorded statements of Bellamy were made available to defense counsel before Bellamy testified. Petitioner points to no evidence that was unavailable to him that reasonably could have changed the jury verdict if available. *See, e.g., Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987).

Petitioner also contends that the prosecutor continually engaged in improper questioning, commentary and other misconduct. The court has examined the record and finds that these events, individually or in combination, did not deny petitioner a fair trial.

Petition dismissed. So ordered.