Garvey v. Duncan

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued September 15, 2006     Decided May 9, 2007)

Docket No. 05-5764-pr

_____

Thomas Garvey,

Petitioner-Appellant,

v.

George Duncan, Eliot Spitzer, New York State Attorney General,

Respondents-Appellees.

_____

Before:
CARDAMONE, MINER, and STRAUB,
Circuit Judges.

_____

Defendant Thomas Garvey appeals from the September 21, 2005 order of the United States District Court for the Southern District of New York (Wood, J.) dismissing his petition for a writ of habeas corpus.

Affirmed.

Judge Straub dissents in a separate opinion.

_____

JOHN W. BERRY, New York, New York (Ashley F. Waters, Akin Gump Strauss Hauer & Feld, L.L.P., New York, New York; David Crow, The Legal Aid Society, Criminal Appeals Bureau, New York, New York, of counsel), for Petitioner-Appellant.

HAE JIN LIU, Assistant District Attorney, Bronx, New York (Robert T. Johnson, District Attorney, Joseph N. Ferdenzi, Nancy D. Killian, Assistant District Attorneys, Bronx County, Bronx, New York, of counsel), for Respondents-Appellees.

CARDAMONE, Circuit Judge:

On this appeal, after defendant had been convicted of burglary in state court, he filed a petition in the United States District Court for the Southern District of New York seeking habeas corpus relief alleging a violation of his due process rights based on identity evidence admitted against him at trial. It is clear that the burglar's identity did not at the time of the burglary press itself on the victim. Yet, on appeal from the denial of habeas relief defendant faces a procedural hurdle before the merits of his argument may be examined. If firmly established and regularly followed state law provides an independent (from the federal issue raised) and adequate basis for sustaining the state court's judgment, a federal court is precluded from reviewing the merits of a petitioner's claim for habeas relief so long as application of the state rule was not exorbitant on the facts of petitioner's case. Here, the district court denied defendant habeas relief on the merits. We do not reach the merits because such review is barred by independent and adequate state law grounds.

Defendant Thomas Garvey (defendant or petitioner) appeals from the September 21, 2005 order of the Southern District of New York (Wood, J.) dismissing his petition for a writ of habeas corpus. Defendant's principal argument is that the New York state trial judge (Bernstein, J.) violated Garvey's due process rights by allowing into evidence his identification allegedly

2

made under suggestive circumstances. The state trial court judge reasoned that since Garvey was not in police custody at the time of the identification his claim of identification under suggestive circumstances was groundless. On appeal to the New York State Supreme Court, Appellate Division, Garvey asserted that even if the suggestive identification was entirely orchestrated by civilians, it still should not have been admitted into evidence against him, and instead should have been quashed. The appellate division ruled that Garvey's due process claim was unpreserved on appeal because that claim was not raised at trial as required by the applicable New York rule of criminal procedure. Garvey contends before us that the state procedural rule was misapplied in his case and thus does not constitute an adequate state ground for decision that would bar federal habeas jurisdiction.

The district court found Garvey's claim was not procedurally barred, but nonetheless dismissed the petition after reviewing the merits. In our view Garvey's claim was procedurally barred. Hence, while we affirm the result reached in the district court, we do so on different grounds.

BACKGROUND

A. The Burglary, and Identification of Defendant

At 4:40 in the early morning of September 20, 1996 Violet McKenzie was abruptly awakened in her Bronx County home when she heard noises in her downstairs kitchen. McKenzie got out of bed,

3

turned on the lights at the top of the stairs, and began to walk downstairs. As she went down she saw two strange men hurriedly fleeing from her house carrying what appeared to be her personal property in their arms.

McKenzie had two opportunities at the scene of the crime to view one of the perpetrators, whom she later identified as Garvey. She first observed him for 30 seconds at a distance of 12 to 15 feet in the hallway of her home. She observed him a second time from a second floor window as he quickly walked away. McKenzie later testified that on both occasions she was able to observe the person's clothing, skin color, and facial hair. But in the police report she made at 5:40 a.m. on the day of the burglary, McKenzie was unable to provide a physical description of the thief. According to routine police procedure, which was followed here, the reporting officer asked McKenzie to provide a physical description of the intruder, including such details as his age, height, weight, hair, facial hair, complexion, and clothing. The complaint report reflects that the only description McKenzie was able to provide the officer at that time was that the person she observed was wearing "dark clothing." Because such is hardly a distinguishing characteristic of a nighttime burglar, from this it is not surprising that the officer concluded McKenzie was unable to identify the perpetrator of the burglary.

4

About five hours later that same morning, at 10:30 a.m., McKenzie was summoned to her neighbor's yard. The neighbor's husband, Theodore Gaines, had caught a man retrieving "some type of video machine" from Gaines' trash cans. The neighbor knew McKenzie had been burglarized a few hours earlier, so Gaines and other neighbors surrounded Garvey -- whom they believed might be one of the burglars -- to give McKenzie an opportunity to come over and see if she could identify him. When McKenzie arrived in Gaines' yard, she saw Gaines holding Garvey. At Garvey's feet was McKenzie's video compressor, an object that had been taken during the burglary. She immediately identified Garvey as the person whom she had seen earlier that morning.

Two police officers, Dwayne Davis and John Raftery, arrived a few minutes later, and found Garvey surrounded by a group of people in Gaines' yard. Officer Raftery escorted Garvey to one side for his own safety, while Officer Davis spoke to Gaines. As Officer Davis spoke with Gaines, McKenzie approached Officer Davis and informed him that Garvey was one of the men that had burglarized her home just hours before. Upon learning this, the officers placed Garvey under arrest.

### B. Prior Proceedings

On October 1, 1996 Garvey was indicted for burglary in the second degree, N.Y. Penal Law § 140.25[2], grand larceny in the third degree, N.Y. Penal Law § 155.35, and criminal possession of stolen property in the third degree, N.Y. Penal Law § 165.50.

5

Before trial Garvey moved to suppress McKenzie's identification of him at the time of his arrest, arguing that it was suggestive. Defendant maintained he was identified by McKenzie under suggestive circumstances because he was handcuffed and in police custody. The trial court conducted a hearing where the two police officers testified regarding the events occurring at Garvey's arrest. The state trial court ruled the evidence of McKenzie's identification of Garvey would not be excluded at trial, stating:

> I make the following conclusions of law:
>
> No suggestive acts occurred by the police department. The holding of the defendant initially was by a private citizen and when the officer was investigating it, another private citizen, identifying herself, approached him and said that she was a witness to complaint of a burglary occurring shortly before in her premises.
>
> The officer had probable cause to arrest defendant. No suggestiveness occurred, and I find that the out-of-court identification may be testified to and if there is any in-court identification, that, of course, may be testified to, also.

As a result, McKenzie's in-court and out-of-court identifications of defendant were both admitted into evidence at his trial.

Garvey was convicted of burglary in the second degree by a jury. Judgment was rendered by the New York Supreme Court, Bronx County, on March 31, 1998, and since Garvey was a second felony offender, he was sentenced to a ten-year term of imprisonment. On appeal to the Appellate Division, Garvey urged for the first

time that his identification should have been excluded because of civilian-orchestrated suggestive circumstances. The appellate division ruled that since this claim had not been raised at trial, it was not preserved. People v. Garvey, 717 N.Y.S.2d 181, 182 (1st Dep't 2000). The First Department also noted that were it to review the merits of Garvey's claim, it would find that the identification was sufficiently reliable under all the circumstances. Id.

Garvey sought leave to appeal that ruling to the New York State Court of Appeals. On March 5, 2001, the request was denied. See People v. Garvey, 96 NY2d 783 (2000) (table). On June 4, 2002 Garvey sought a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254 based on his claim that it was error for the state trial court to admit into evidence the allegedly suggestive identification. The district court denied the petition after considering the merits. A notice of appeal was filed with this Court on October 24, 2005.

DISCUSSION

I  Standard of Review

When this Court reviews a district court ruling on a habeas corpus petition, we examine the factual findings of the district court for clear error, but we consider questions of law, like the one at issue here, de novo. See Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Campusano v. United States, 442 F.3d 770, 773 (2d Cir. 2006).

7

II   Independent and Adequate State Law Grounds

Federal courts generally will not consider a federal issue in a case "if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (alteration and emphases omitted). This rule applies regardless of whether the independent state law ground is substantive or procedural and whether the case is in federal court on direct review or from state court via a habeas corpus petition. Id. However, the state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is "firmly established and regularly followed" in the state. Id. at 376. Further, in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is "exorbitant." Id. In Lee, the Supreme Court factored in three considerations to determine that application of the firmly established and regularly followed state procedural rule would be exorbitant. Id. at 381. Although we have observed that these three factors are not a test for determining adequacy, they are nonetheless used as guides in evaluating "the state interest in a procedural rule against the circumstances of a particular case." Id. at 381-85; see Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003). The three factors are

> (1) whether the alleged procedural violation was actually relied on in the trial court,

and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 240.

Since the adequacy of a state procedural bar to the assertion of a federal question is itself a federal question, Lee, 534 U.S. at 375, we must ascertain whether the state rule at issue here is firmly established and regularly followed, and further whether application of that rule in this case would be exorbitant. To do so, we look at the statute and case law construing it. Cotto, 331 F.3d at 243.

### III  State Procedural Bar

Under New York statutory law, there are two distinct ways a question of law can be preserved for appeal. The first is through an objection at trial by a party later claiming error. N.Y. Crim. Proc. Law § 470.05(2). The second is when the trial court makes an express ruling with regard to a particular question. Id. We consider in turn whether the issue Garvey raised on appeal in state court was preserved in either of these two ways.

A. What Kind of "Protest" is Sufficient Under § 470.05(2) and the Case Law Interpreting It?

9

Under the New York statute, a question of law is preserved for appeal

> [W]hen a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court.

Id. New York courts have explained that to preserve a claim of error in the admission of evidence at trial under § 470.05(2) a defendant must make his or her position known to the court. People v. Gray, 86 NY2d 10, 19 (1995). The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time. People v. Jones, 81 AD2d 22, 41-42 (2d Dep't 1981). A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. See Gray, 86 NY2d at 20. Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error. Id. at 19. See also People v. Parsons, 816 N.Y.S.2d 271, 271 (4th Dep't 2006) ("Defendant failed to preserve for our review his further contention that the evidence is legally insufficient . . . inasmuch as his motion to dismiss was not specifically directed at that alleged insufficiency."); People v. Rodriguez, 693 N.Y.S.2d 54, 55 (2d Dep't 1999) (defendant's claim "is unpreserved for appellate review since it was not advanced with specificity before the trial court"); People v. McLane, 682 N.Y.S.2d 24, 25 (1st Dep't 1998) ("By failing to elaborate on the basis for his objection to the court's charge on justification, defendant failed to provide the court with a fair opportunity to rectify any error and failed to preserve the issue for appellate review."); People v. Cooper, 537 N.Y.S.2d 700, 701 (4th Dep't

11

1989) ("Although defendant objected on two occasions to receipt of such evidence, neither objection specifically questioned admissibility upon the ground now raised" and consequently claimed error "was not preserved for appellate review.").

This rule applies with respect to motions to suppress as it does in every other context. See, e.g., People v. Brooks, 808 N.Y.S.2d 517, 518 (4th Dep't 2006) ("In support of his further contention that the [trial] court erred in denying his suppression motion, defendant raises a ground not raised before the suppression court. Thus, defendant's contention is not preserved for our review."); People v. Fabricio, 763 N.Y.S.2d 619, 620 (1st Dep't 2003) ("Since defendant's suppression motion [at trial] was made on completely different grounds from those raised on appeal, his present challenges . . . are unpreserved.").

### B. Was Garvey's Protest at Trial Sufficient to Preserve the Issue He Raises on Appeal?

In this case the defendant timely moved to suppress the identification testimony. He argued in an omnibus motion before the trial court that the fact that the victim identified him after he was seized and handcuffed by the police made that identification unnecessarily suggestive. The defendant asserted that the proper course of action would have been for the arresting officers to have taken him back to the precinct to be put in a lineup. It is clear from the record that the defendant's suppression motion was based on his contention that

12

the police orchestrated an unduly suggestive identification. Defendant's motion to suppress the identification was denied because the trial court found that defendant was not in police custody at the time the identification was made. There can be no question defendant preserved his right to appeal on this ground and attempted to persuade the Appellate Division that he was in fact in police custody at the time the identification occurred.

However, this is not the ground on which defendant based his appeal. Rather, on appeal defendant averred for the first time that his identification should have been suppressed due to the suggestive circumstances created by civilians. The Appellate Division deemed this claim unpreserved. Garvey, 717 N.Y.S.2d at 182.

New York courts consistently interpret § 470.05(2) to require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error. See McLane, 682 N.Y.S.2d at 25. Here, defendant did not provide the trial court with a fair opportunity to consider the legal issue of whether the civilian-facilitated identification was suggestive and needed to be suppressed. The fact that the defendant had declared that the identification was suggestive because he was in police custody at the time of the identification did not put the trial court on notice that there might be a legal issue as to whether a civilian-facilitated identification could be problematic as well.

13

Under the firmly established and regularly followed New York interpretation of § 470.05(2), this issue cannot be raised for the first time on appeal.

The dissent's contention that Garvey's counsel was prevented from presenting the issue of civilian suggestiveness at the suppression hearing because the trial court interrupted him is undermined by both the limited nature of the suppression motion and counsel's statements at the hearing. The dissent does not, nor could it, dispute the fact that Garvey's motion did not expressly challenge his identification based upon civilian conduct. In fact, the motion cannot be read to encompass anything beyond a police suggestiveness claim:

> The People have given notice of their intention to offer testimony identifying the defendant herein as the person who committed the crimes charged, which testimony will be given by a witness who has previously identified the defendant at a "corporeal showup" conducted on September 20, 1996. Defendant seeks herein to suppress said identification on the ground that the "showup" was unconstitutionally suggestive, and was the product of an illegal arrest.
>
> Upon information and belief (source: police reports and investigations) on September 20, 1996, the defendant was walking along a public street in the vicinity of Grace Avenue and Ely Avenues, Bronx, New York, when he was seized by several officers. . . .
>
> Despite the fact that the defendant was not engaged in criminal conduct, he was seized by police and handcuffed. Almost six and one half hours after the alleged burglary took place the witness identified the

14

> defendant in a corporeal show-up <u>as he stood</u>
> <u>handcuffed</u> in the street.
>
>     The defendant contends that the
> identification violated his constitutional
> rights because it was so unnecessarily
> suggestive as to be a denial of due process
> of law.

Affirmation in Supp. of Def.'s Mot. to Suppress at 8-9, <u>New York</u>
<u>v. Garvey</u>, No. 7174/96 (Sup. Ct. Bronx County Dec. 9, 1996)
(emphases added).

As even the dissent recognizes, Garvey's allegation that the identification was flawed rested upon his counsel's belief that Garvey had already been handcuffed by the police when he was identified. Based upon the foregoing, it would have been reasonable for the trial court to anticipate hearing only the police conduct issue at the hearing and instruct counsel to "rest on the record" accordingly. Indeed, counsel never indicated that the record contained anything other than a police suggestiveness claim.

In addition, the dissent's conclusion that our opinion in <u>Dunnigan v. Keane</u>, 137 F.3d 117, 128 (2d Cir. 1998), could not have apprised the trial court to consider the issue of civilian suggestiveness necessarily reveals the likelihood that Garvey would not have known to raise it. Counsel's foundational questions to Officer Davis related to the fact that he observed a crowd of people when he came upon the scene. The questions are not equivalent to a discrete objection based upon civilian suggestiveness. Given the prevailing law in New York at the

15

time, the questions sought only to show that the civilians were holding Garvey before the police arrived. Such a showing would relate to the issue of whether the identification procedures were orchestrated by the police. In short, there is nothing in the record to show that Garvey adequately challenged his identification based upon civilian, as opposed to police, conduct, and any inference to the contrary is purely speculative.

### C. When Has a Court Expressly Decided an Issue Under § 470.05(2)?

Under New York law, even in the absence of a proper objection on a particular issue, a question of law is preserved for appeal if "in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal." § 470.05(2). New York's highest court explained how this standard should be applied in a case involving a defendant whose U-Haul rental van was pulled over by police. See People v. Turriago, 90 NY2d 77 (1997). In Turriago, after the defendant consented to a police search of his vehicle, the police found a dead body inside. At trial, the defendant argued that his consent had been involuntary, and the evidence should therefore be suppressed. Id. at 82. The trial court found the defendant's consent to the search was voluntary and denied suppression of the physical evidence. Id. On appeal, the Appellate Division ruled the consent invalid because "the police lacked a founded suspicion that criminal activity was afoot so as to give rise to

16

the common-law right to inquire" when they pulled the vehicle over. Id. at 83.

The Court of Appeals reversed, emphasizing that under § 470.05(2), the trial court must expressly decide an issue before it is preserved on appeal. Id. at 83-84. Turriago noted that while the trial court had "allu[ded] to the subjective suspicions of the troopers in seeking to search the rental van," those comments "were made in response to defendant's claim of involuntariness of his consent." Id. at 83. Because the trial court had never "expressly decided that the request for consent to search was justified by a founded suspicion of criminal activity," that issue had not been preserved on appeal. Id. at 84 (emphases omitted). The Court of Appeals emphasized that, in determining whether particular statements of a trial court constitute a ruling on an issue not raised by the parties, it is essential to look to the context in which those statements are made. Id. at 83.

Turriago indicates three things that are useful in determining how to apply § 470.05(2) in the present case. First, New York courts take seriously § 470.05(2)'s requirement that an issue must be expressly decided by the trial court (if not raised by a party) for it to be preserved for appeal. See People v. Baughan, 812 N.Y.S.2d 528, 529 (1st Dep't 2006) (finding defendant's argument on appeal unpreserved because the court did not expressly decide the issue); People v. Alston, 778 N.Y.S.2d

17

881, 881 (1st Dep't 2004). Second, <u>Turriago</u> instructs that when a court rules against suppressing evidence on one ground that ruling does not preserve for appeal all other potential grounds for suppressing that evidence. See <u>People v. Cusumano</u>, 484 N.Y.S.2d 909, 912 (2d Dep't 1985) ("[D]efendant's present challenge to the court's ruling which denied suppression of his statements to the police was also not preserved for appellate review since this particular ground for suppression was not raised at the hearing."). Third, <u>Turriago</u> tells us that statements made by the trial court that might imply that it was considering an issue not raised by the parties should be read in context rather than in a vacuum.

### D. Did the Trial Court Expressly Decide the Issue Garvey Raised on Appeal?

In this case, the trial court ruled that

> No suggestive acts occurred by the police department. The holding of the defendant initially was by a private citizen and when the officer was investigating it, another private citizen, identifying herself, approached him and said that she was a witness to complaint of a burglary occurring shortly before in her premises.
>
> The officer had probable cause to arrest defendant. No suggestiveness occurred, and I find that the out-of-court identification may be testified to . . . .

The state trial court at no point expressly decided whether the civilian-arranged identification was suggestive. Although the court stated that "no suggestiveness occurred," this conclusory statement was clearly limited to suggestive acts by the police --

18

the sole source of suggestiveness raised by the defendant in his motion and at the hearing. It would be strange indeed if, in this single sentence, the trial court intended to raise and resolve sua sponte the question of whether the civilian-orchestrated identification was unconstitutionally suggestive. Rather, it is clear that the court was simply summarizing its earlier statement that "[n]o suggestive acts occurred by the police department." Contrary to the dissent's observation, the trial court's determination that "[n]o suggestive acts occurred by the police department" was not a "conclusion[] of law bear[ing] directly on the issue of suggestive civilian conduct" (emphasis added). Rather, the court's discussion encompassed factual findings relating to the scene of Garvey's arrest that, by themselves, did not decide the identification issue as a matter of law. Further, under New York law, the fact that the trial court ruled the evidence should not be suppressed on one ground does not preserve for appeal any other ground the defendant might have raised -- but did not -- for suppressing the evidence. Finally, when the court's decision is read in context, the references to the defendant having been held by civilians do not indicate the trial court was ruling upon whether the civilian-arranged identification was suggestive. Instead, the trial court was simply pointing out that it was parties other than the police who took part in any suggestive acts that occurred. This was relevant because it negated Garvey's

19

contention that he was in police custody at the time the identification was made. Consequently, we conclude the trial court did not expressly decide the issue that the defendant attempted to raise on appeal.

IV  Would it Be Exorbitant to Apply § 470.05(2) in This Case?

Although § 470.05(2) is a firmly established and regularly followed New York procedural rule, it will not bar us from reviewing the federal claim on the merits if the application of the state rule to this case is exorbitant. See Lee, 534 U.S. at 376. To determine whether it would be exorbitant to apply § 470.05(2) in this case, we look at Lee's three considerations. See Cotto, 331 F.3d at 240. Since the three considerations are closely tied to the facts in Lee, a brief summary of those facts is helpful.

In Lee, the trial court refused to grant the defendant an overnight continuance of his trial to locate subpoenaed, previously present, but suddenly missing witnesses that were key to his defense. 534 U.S. at 365. The trial court explained it was refusing to grant Lee the continuance because it was busy the next day and had another trial scheduled to begin the weekday after that. Id. at 366. Having had no opportunity to present alibi witnesses, Lee was subsequently found guilty. Id. The state appellate court disposed of the case on procedural grounds, explaining that Lee's continuance motion was defective under the state rules. Id. at 365. The Supreme Court ruled that such

20

application of a state rule was exorbitant, based on the following three considerations. <u>Id</u>. at 376, 381-83. We consider each in turn.

> (1) Whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision.

See <u>Cotto</u>, 331 F.3d at 240 (summarizing <u>Lee</u>'s first consideration).

In this case the alleged procedural violation was the defendant's failure to raise a specific issue before the trial court. It is therefore meaningless to ask whether the alleged procedural violation was actually relied on in the trial court -- the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier. We may ask, however, whether perfect compliance with the state rule would have changed the trial court's decision. Unlike in <u>Lee</u>, where the trial court would have reached exactly the same decision for exactly the same reasons had Lee perfectly complied with the state rules governing continuance motions, here perfect compliance with the state rule would have had an impact on the trial court's decision. Had Garvey complied with § 470.05(2), the trial court would have had the opportunity to consider whether the civilian-orchestrated identification should be suppressed. Thus, the first consideration does not indicate that this application of § 470.05(2) was exorbitant.

      (2)    Whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented.

See Cotto, 331 F.3d at 240 (summarizing Lee's second consideration).

In Lee, the Court demonstrated that in the "unique circumstances" presented, that is, "the sudden, unanticipated, and at the time unexplained disappearance of critical, subpoenaed witnesses on what became the trial's last day," the state courts had never before applied the state rule in question. Lee, 534 U.S. at 382. In contrast, this case presents no unique set of circumstances similar to the circumstances in Lee. There was no sudden or unanticipated event that led Garvey not to comply with § 470.05(2). Therefore, the second consideration also does not indicate that application of § 470.05(2) was exorbitant.

      (3)    Whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate. governmental interest.

See Cotto, 331 F.3d at 240 (summarizing Lee's third consideration).

The Lee Court deemed the third consideration the "most important." 534 U.S. at 382. It explained that although the form of Lee's continuance motion was defective, he had presented to the trial court all of the information that would have been included in a properly served motion. Id. at 383-85. Thus, the Supreme Court ruled it would be "so bizarre as to inject an

22

Alice-in-Wonderland quality into the proceedings" to apply the state procedural rule in such a case. Id. at 383. The Court explained that demanding perfect compliance under the circumstances would not serve any legitimate governmental interest because the essential requirements of the rule had already been substantially met. Id. at 385.

In the present case, in contrast, the defendant did not just violate the formal requirements of § 470.05(2). He violated the very substance of the rule. The basis of § 470.05(2) is that the trial court must be given a fair opportunity to rule on an issue of law before it can be raised on appeal. Had the defendant here put the trial court on notice regarding his argument that the civilian-orchestrated identification was suggestive, perhaps it would have been exorbitant to punish him for not complying with some technical aspect of § 470.05(2). Such is not our case. The defendant violated the very essence of § 470.05(2), and demanding compliance with § 470.05(2) serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error. Hence, the third consideration, as the first two, does not indicate that this application of § 470.05(2) was exorbitant.

Therefore, because § 470.05(2) is a state law ground on which the New York appellate court's decision is based, and that ground is both independent of any federal question and adequate

23

under firmly established and regularly followed state law, we will not disturb the state appellate court's ruling that the defendant's protest at trial was insufficient to preserve the arguments he wishes to raise on appeal.

Defendant's claim that the civilian-orchestrated identification should be suppressed was not raised either by specific objection or by the trial court's decision. As a consequence, the procedural bar of § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division's holding.

We need not reach or decide the defendant's federal claims, since there was an independent and adequate state law ground for the state appellate court's decision to affirm the defendant's conviction.

CONCLUSION

For the foregoing reasons, the order of the district court dismissing Garvey's petition for a writ of habeas corpus is affirmed.

STRAUB, Circuit Judge, dissenting.

Because I cannot agree with the majority's narrow view of the record in this case, I respectfully dissent. The majority requires that Garvey articulate his objections with near-surgical precision, yet casts aside the inconvenient fact that the trial court prevented Garvey's counsel from explaining the full scope of his suppression motion after the close of evidence – arguably the most important time. Even so, Garvey still succeeded in raising the issue of suggestive civilian conduct through the testimony elicited during the suppression hearing. Indeed, Garvey's counsel so readily raised the issue that the trial court's findings of fact and conclusions of law specifically address it in language that the majority glosses over. Moreover, the trial court rendered a ruling on the issue of suggestive civilian conduct by erroneously dismissing it as immaterial to the constitutional suppression analysis. Ironically, and unfortunately, the majority endeavors to transform the trial court's dismissal of the question into Garvey's failure to raise it.

Principally as a result of my view of the facts, I also conclude that the majority's application of N.Y. C.P.L. § 470.05(2) is exorbitant and thus inadequate to bar our review of Garvey's constitutional claim. Finally, perceiving no obstacle to our review of the merits, I conclude that the state appellate court unreasonably applied clearly established Supreme Court law.

25

I therefore would vacate the judgment of the District Court and remand for a determination, in the first instance, of whether the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." *Wray v. Johnson*, 202 F.3d 515, 525 (2d Cir. 2000) (internal quotation marks omitted).

## I. There Is No Independent and Adequate State Procedural Bar

For simplicity's sake, I shall assume that the majority's strict view of § 470.05(2) is correct. *See supra*, at 9-17. I note that reasonable minds can differ on this point. *See* N.Y. C.P.L. § 470.05(2) ("[A] party who without success has either expressly *or impliedly* sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter . . . sufficiently to raise a question of law with respect to such disposition or failure *regardless of whether any actual protest thereto was registered*." (emphases added)); *Cotto v. Herbert*, 331 F.3d 217, 247 (2d Cir. 2003). Nevertheless, this issue is not the crux of my disagreement. Taking for granted the majority's exacting view of § 470.05(2) – *i.e.*, that in seeking suppression, Garvey had to challenge suggestive civilian conduct as opposed to suggestive conduct generally – Garvey satisfied that standard for two reasons: because he raised the issue of suggestive civilian conduct at the suppression hearing, and because the trial court

26

rendered a ruling on the issue, albeit an erroneous and dismissive ruling.

**A. Garvey Raised the Issue of Suggestive Civilian Conduct**

I wish to make clear something that the majority has downplayed: the trial court abruptly cut short Garvey's counsel's explanation of all the grounds of the suppression motion. After the close of testimony at the suppression hearing, Garvey's counsel began to explain her motion, as follows:

> Counsel: Your Honor, I would move to suppress the identification of Mr. Garvey at the time of his arrest. Based on the fact that it was, that the information that Officer Davis had at the time was unreliable, Mr. Garvey should have been taken to the precinct and put in a lineup and afforded the opportunity of having, you know, suggestive – –
>
> The Court: Rest on the record.
>
> Counsel: Yes. We rest on the record.

The trial court's directive to "rest on the record" most certainly hampered counsel's ability to fully articulate the grounds of the suppression motion once all the evidence was in. This handicap alone raises serious questions as to the adequacy of the purported procedural bar that the majority embraces. To me, it seems unwise to require Garvey to lodge pinpoint objections when the trial court directs his counsel to quit explaining his objections and rest on the record, especially given that the independent and adequate state bar doctrine "is prudential rather than jurisdictional." *Cotto*, 331 F.3d at 238.

27

Even setting aside this pragmatic concern, prior to the trial court's instruction to rest on the record, Garvey's counsel's questions and Officer Davis's responses more than adequately raised the issue of suggestive civilian conduct. Specifically, Garvey's counsel questioned Davis as follows:

> Counsel: Now, you said that you arrived at the scene and you saw *a crowd of people*; is that correct?
> Davis: Yes, ma'am.
> Counsel: And where was Mr. Garvey in relation to that crowd?
> Davis: He was – he was *surrounded by the crowd*.
> Counsel: Okay. And was *anybody* [*i.e.*, any civilian] *holding him* at the time?
> Davis: Not that I recall, no.

Shortly after that exchange, Garvey's counsel again queried "the location where [Davis] came upon Mr. Garvey *surrounded by the neighbors*?"

Garvey's counsel further probed the civilian-created, and suggestive, conditions under which Davis first encountered Garvey, as follows:

> Counsel: Now, when you came upon this crowd surrounding Mr. Garvey, did you notice any merchandise . . . [i]n the area?
> Davis: There was a machine which I later learned to be a video compressor.
> Counsel: Where exactly was this located?
> Davis: It was on the ground in the same area *where they were all standing.*

Garvey's counsel then questioned the manner in which McKenzie identified Garvey under the conditions described above.

28

In particular, Garvey's counsel elicited testimony that after Garvey had been held by Gaines and surrounded by a crowd of neighbors with the purloined compressor at his feet, one member of that crowd, McKenzie, approached Davis and identified Garvey as the man who "had burglarized her home earlier that day." Once McKenzie made that identification, Davis arrested Garvey.

It was that identification, made under the circumstances described above, that Garvey challenged in his suppression motion as "unconstitutionally suggestive." The fact that Garvey's counsel also asserted in the motion papers that Garvey was handcuffed at the time of McKenzie's identification – which was not true, as the testimony showed – does not mean that Garvey challenged *only* police conduct. Nowhere does the motion contain any limitation as to police conduct only; rather, the motion papers challenge the identification on the broad "ground that the 'showup' was unconstitutionally suggestive," among others. Read fairly and in context, the motion challenged and the testimony specifically addressed all the circumstances surrounding the identification, including those related to civilian *and* police conduct.

Given the broad wording of the motion papers and the scope of the testimony, it is no wonder, then, that the trial court's factual findings bear directly, and in some instances only, on the issue of suggestive civilian conduct. In particular, the trial court found that when the arresting officer arrived, he

29

> observ[ed] a small group of people, in the midst of which was the defendant. The officer did not observe the defendant being held by anyone. The officer was already in the driveway, and Mr. Theodore Ga[i]nes, approached him and told the officer that defendant had been trying to move property from his backyard; that he grabbed him and was holding him until the police came.

Indeed, the trial court concluded that the crowd surrounding Garvey was aggressive enough that Garvey "was moved [by the officer] to a doorway some distance away from the crowd for his own protection," and that shortly thereafter, "Violet McKenzie approached the officer and said that she had observed the defendant remove property from her home earlier and that also the property that was in Ga[i]nes' backyard was property that belonged to her."

Similarly, the trial court's conclusions of law bear directly on the issue of suggestive civilian conduct, specifically the conclusion that,

> No suggestive acts occurred by the police department. *The holding of the defendant initially was by a private citizen* and when the officer was investigating it, *another private citizen*, identifying herself, approached him and said that she was a witness to [the] complaint of a burglary occurring shortly before in her premises.

I cannot help but wonder why, if Garvey had failed to raise the issue of suggestive civilian conduct, the trial court rendered factual findings and legal conclusions on that very subject.

The record passages cited above establish two points. First, Garvey raised the issue of suggestive civilian conduct

because his counsel elicited specific testimony as to (1) whether, prior to McKenzie's identification, her neighbors surrounded Garvey in the driveway, (2) whether any of the neighbors, such as Gaines, were holding Garvey, (3) whether, at the time the crowd surrounded Garvey, McKenzie's stolen property was lying at Garvey's feet, and (4) whether McKenzie came forth from the crowd to identify Garvey under the circumstances already described. Simply put, the motion sought to suppress the identification on the ground of suggestiveness, and the testimony, not to mention the trial court's findings of fact and legal conclusions, specifically addressed suggestive civilian conduct. Accordingly, I cannot understand how the majority concludes that Garvey failed to raise the issue in a manner sufficient "to provide the trial court with a fair opportunity to consider" it. *Supra*, at 12.

### B. The Trial Court Issued a Ruling on the Issue of Civilian Suggestiveness

Further, the trial court actually ruled on whether suggestive civilian conduct required suppression of McKenzie's identification testimony. I do not pretend that the trial court's ruling is perfectly neat; brief oral bench rulings, such as the one issued here, rarely are. Nevertheless, the trial court said enough to show that it considered the issue of suggestive civilian conduct and found it irrelevant. Specifically, the trial court's rulings that "[n]o suggestive

31

acts occurred by the police department" and that "[t]he holding of the defendant initially was by a private citizen," establish that the trial court (1) was quite aware of the issue of suggestive conduct by private citizens, such as Gaines's holding of Garvey, but (2) believed that suggestive *civilian* conduct – as opposed to *police* conduct – raised no constitutional concerns. That is, counsel's questions brought the issue of civilian conduct to the trial court's attention, but the trial court considered civilian conduct to be legally immaterial, and therefore dismissed it in passing. Hence its conclusion, styled as one of law, that the "[t]he holding of the defendant initially was by a private citizen," and thus not a proper ground for suppression. Also telling is what the trial court did not say: after noting that some suggestive civilian conduct had occurred – again, Gaines holding Garvey – the trial court did *not* rule, or even imply, that Garvey had failed to challenge such conduct. Instead, the trial court erroneously treated the question, properly raised for decision, as if it were irrelevant to the constitutional suppression analysis.

Lest one think that I am adopting a strained reading of the trial court's decision, I note that it is unsurprising that the trial court took this view; the state of the law in our circuit at the time of the trial court's ruling left open the possibility that suggestive civilian conduct was legally immaterial. It was not until one month *after* the trial court's ruling that we

expressly held that suggestive civilian conduct, just as much as police conduct, may raise constitutional concerns. *See Dunnigan v. Keane*, 137 F.3d 117, 128 (2d Cir. 1998) ("The linchpin of admissibility, therefore, is not whether the identification testimony was procured by law enforcement officers, as contrasted with civilians, but whether the identification is reliable.").[1] What is surprising, however, is the majority's effort to morph the trial court's erroneous ruling on an issue into Garvey's failure to raise it.

In sum, as I see the facts of this case, Garvey's counsel raised the issue of suggestive civilian conduct, the trial court considered it in its factual and legal findings, and the trial court actually, although improperly, ruled on it by dismissing the question as legally irrelevant. Each of those acts satisfies § 470.05(2)'s preservation requirement, even as the majority strictly interprets it. Indeed, both the Magistrate Judge and the District Court Judge who reviewed Garvey's petition similarly concluded.

---

[1] The fact that we did not expressly clarify this point until shortly after the trail court's decision does not impact the merits of Garvey's petition. Were we to reach the merits, we would look to the law in effect "at the time of the Appellate Division's judgment," not that in effect at the time of the trial court's decision. *Harris v. Kuhlmann*, 346 F.3d 330, 345 (2d Cir. 2003). By the time the Appellate Division rejected Garvey's appeal, we had decided *Dunnigan*, in which we interpreted Supreme Court precedent to require suppression of identification testimony when the identification initially was made under unduly suggestive, civilian-created circumstances. *See Dunnigan*, 137 F.3d at 128-30.

33

**C.  Section 470.05(2), as Applied by the Majority, Is An Inadequate Bar to Review**

In addition to my factual disagreement with the majority, its application of § 470.05(2) is exorbitant and thus inadequate to bar our review of Garvey's constitutional claim.  As the majority recognizes, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'"  *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).  Three factors guide the inquiry into whether a case fits "within that limited category."  *Id.* (internal quotation marks omitted).

First, "whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision."  *Id.*  Second, "whether state caselaw indicate[s] that compliance with the rule was demanded in the specific circumstances presented."  *Id.*  Third, "whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest."  *Id.* (quoting *Lee*, 534 U.S. at 381-85).

My view of the facts drives my analysis of these three factors.  In respect of the first factor, the trial court did not rely, and could not have relied, on Garvey's purported

34

default because there was no default. Further, Garvey's compliance with § 470.05(2) had no effect on the trial court's decision because Garvey raised the issue of suggestive civilian conduct and the trial court erroneously brushed it aside. This factor, therefore, favors Garvey.

As to the second factor, I have accepted, for the sake of argument, the majority's strict interpretation of § 470.05(2), and found it satisfied here, which, in my view, quite decisively favors Garvey. Finally, regarding the third factor, Garvey substantially complied with the rule given the reality of the suppression hearing. His counsel elicited testimony regarding the civilian-created circumstances surrounding McKenzie's identification and, before counsel could fully explain the bases of the motion, the trial court instructed her to rest on the record. In light of the trial court's instruction to stop speaking, Garvey's counsel substantially complied with the state's preservation requirement by raising the issue through the prior testimony. The third factor thus favors Garvey as well. Accordingly, the majority's application of § 470.05(2) to the facts of this case is exorbitant and consequently inadequate to bar our review of Garvey's constitutional claim.

For all those reasons, I conclude that there is no independent and adequate state bar to our review of Garvey's constitutional claim.

## II. The Appellate Division Unreasonably Applied Clearly Established Supreme Court Law

Having concluded that there exists no bar to our review of the merits of Garvey's petition, I also conclude that the judgment of the Appellate Division, First Department constitutes an unreasonable application of clearly established Supreme Court law, as explained below.

### A. Standards Applicable to Garvey's Habeas Petition

In order to prevail on a habeas petition, Garvey must show that the state court's "adjudication of the claim . . . resulted in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Clearly established Supreme Court law consists of the Supreme Court's holdings, as opposed to dicta. *See Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002).

An "unreasonable application" occurs when a "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Cotto*, 331 F.3d at 247 (internal quotation marks omitted). The application of federal law must be "objectively unreasonable," which requires the petitioner to demonstrate "some increment of incorrectness beyond error." *Id.* at 248 (internal quotation marks omitted). Nevertheless, "[t]his increment need not be great; otherwise, habeas relief would be

36

limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jenkins v. Artuz*, 294 F.3d 284, 292 (2d Cir. 2002) (internal quotation marks omitted).

Although there exists no test to determine whether a state court ruling is objectively unreasonable, three factors guide the inquiry: (1) whether there exists a "lack of any precedent supporting [the state court's] result in the Supreme Court or any federal court of appeals"; (2) whether the state court has given "specific reasons" for its conclusion; and (3) whether the state court's conclusion is consistent with the "purpose behind" the relevant rule. *Cotto*, 331 F.3d at 251-52.

### B. Substantive Standards Governing the Admission of Identification Testimony Following a Suggestive Confrontation

The Due Process Clause forbids the admission of identification testimony where there exists a "very substantial likelihood of irreparable misidentification." *Neils v. Biggers*, 409 U.S. 188, 198 (1972) (internal quotation marks omitted). Once a suggestive confrontation occurs between the identifying witness and the suspect, "the central question" is "whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199 (internal quotation marks omitted). In *Biggers*, the Supreme Court set forth "the factors to be considered" in determining whether an identification is sufficiently reliable notwithstanding some degree of suggestiveness. Those factors

37

"include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. In *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), the Court added another step to the analysis: "Against these [*Biggers*] factors is to be weighed the corrupting effect of the suggestive identification itself." *See also id.* at 116.

## C. The Decisions of the Appellate Division and the District Court

On the merits, the Appellate Division concluded, without elaboration, that "the identification was sufficiently reliable under all the circumstances." After unsuccessfully seeking leave to appeal in the Court of Appeals, Garvey filed this habeas petition. He principally urges that pursuant to the *Biggers* analysis, McKenzie's near-total failure to initially describe the burglar to the police required the District Court to severely – if not entirely – discount other factors that might weigh in favor of admissibility, such as McKenzie's opportunity to view the burglar and the certainty of her later identification.

The District Court agreed that "[c]learly, the identification of Mr. Garvey was suggestive." The Court also "agree[d] that McKenzie's inability to describe the burglars

38

weighs against finding her later identification sufficiently reliable." Nevertheless, the Court rejected Garvey's claim that McKenzie's initial failure to describe the burglar undercuts other *Biggers* factors, mainly because "[i]f the Court were to weigh the *Biggers* factors as Garvey urges, the ability of a witness to describe a suspect to the police prior to the identification would be dispositive" by itself, whereas the *Biggers* analysis is based upon "the totality of the circumstances."

Accordingly, the District Court analyzed each *Biggers* factor independently and concluded that the identification was sufficiently reliable. In particular, the District Court relied upon the strength of three *Biggers* factors: McKenzie's opportunity to observe Garvey, her attentiveness during the crime, and the certainty of her later identification. The District Court reasoned that,

(a) McKenzie had a clear opportunity to observe Garvey at the time of the crime; (b) she was not a casual or inattentive observer, as she descended the stairs for the specific purpose of investigating the loud noise she had heard; (c) after turning on the downstairs lights, McKenzie had a clear, unobstructed view of [Garvey] as he was trying to escape through McKenzie's front door; (d) McKenzie also observed [his] face again, a few moments later, from a bedroom window, as he looked back repeatedly towards McKenzie's house while fleeing; (e) McKenzie expressed certainty that Garvey was the burglar she saw flee[]ing her home; (f) it was just a few hours after the burglary that McKenzie told [the police] that Garvey was one of the burglars and was wearing the same clothes that one of the burglars had worn.

39

Despite its conclusion, the District Court granted a certificate of appealability on the ground that "the resolution of the constitutional issue underlying Garvey's petition can be debated."

### D. The District Court Misapplied the *Biggers* Factors

As explained below, the District Court committed two legal errors in applying *Biggers* and *Brathwaite* to Garvey's claim. In turn, those errors caused the District Court to ratify a conclusion that amounts to an unreasonable application of established Supreme Court precedent.

First, the District Court erred by considering the *Biggers* factors in isolation. As we have pointed out before, one *Biggers* factor affects another – especially in cases where the victim initially fails to describe the perpetrator – and this interplay is not to be ignored. For example, in *Raheem v. Kelly*, 257 F.3d 122, 139-40 (2d Cir. 2001), *cert. denied*, 534 U.S. 118 (2002), we reasoned that a witness's inability to describe the perpetrator shortly after the crime devalued the certainty of his later identification. There, a man in a black leather coat entered a bar in which two witness, Shiloh and Cooke, were drinking. *Id.* at 125. Shortly after the man shot and killed the owner of the bar, Shiloh and Cooke attempted to describe him to police, but could give only vague descriptions. *Id.* at 125-26, 139. They later picked Raheem out of a suggestive lineup in which he was the only person wearing a black leather coat, and the state court

40

admitted their identification testimony. *Id.* at 126-27, 130. After his conviction, Raheem brought a habeas petition challenging the admission of that testimony, and the District Court dismissed the petition. *Id.* at 125.

In reversing, we reasoned that, "To the extent that either Cooke or Shiloh exhibited certainty [in their later identification of petitioner], we find it difficult to view that certainty as an indicator of reliability independent of the suggestive lineup, given their lack of recollection as to any physical features of the shooter's face (except, as to Cooke, its roundness). Whatever their certainty, it was engendered by the suggestive element itself, the black leather coat." *Id.* at 139.

Likewise, in *Dickerson v. Fogg*, 692 F.2d 238, 245-47 (2d Cir. 1982), we reasoned that a witness's initial failure to describe the perpetrator to police undercut the *Biggers* factors that might otherwise weigh in favor of reliability. There, a man named Colon was carjacked and robbed at gunpoint. *Id.* at 240-41. As the perpetrators ordered him out of the car, he briefly glanced the face of a man sitting in the rear passenger seat. *Id.* at 241. After the crime, Colon, much like McKenzie, could describe his assailants to the police only as "four black males." *Id.* at 242.

Colon later saw Dickerson at the arraignment of another man who had been arrested while driving Colon's stolen car. At that arraignment, Colon identified Dickerson as the man in the rear

41

passenger seat of his car at the time of the carjacking. *Id.* at 241. Colon's identification testimony was admitted at Dickerson's trial. *Id.* at 239-40. After Dickerson was convicted, he petitioned for a writ of habeas corpus. *Id.*

In affirming the District Court's grant of the petition, we noted that Colon's initial, vague description devalued other relevant factors, such as the degree of Colon's attentiveness during the crime: "Lastly, any possibility that Colon's training as a security supervisor contributed to his attentiveness is belied by his inability to describe the back seat passenger to the police with any degree of specificity." *Id.* at 245. As in *Raheem*, we also concluded that the poor initial description undercut the certainty of the later identification: "In sum, not only does the technically accurate but unduly vague description of the back seat passenger furnished to the police before the confrontation diminish the reliability of [Colon's] later identification, but, considering that Colon did not describe [Dickerson] in greater detail until after he viewed [Dickerson] in the courtroom, his second specific description was unmistakably the product of the [suggestive] viewing, and questionably reliable as well." *Id.* at 246.

In this case, McKenzie almost completely failed to describe the burglar to the police when they first arrived at her house shortly after the crime occurred. According to the complaint report, McKenzie described the perpetrator only as a black male.

42

When the responding officer asked her to describe the burglar's age, height, weight, hair color, eye color, whether he had facial hair, and what clothes he was wearing, McKenzie could provide no information whatsoever, except that his clothes were "dark." Her recollection of his appearance was so lacking that she would not even view photographs of suspects in an attempt to identify him. Pursuant to *Raheem* and *Dickerson*, McKenzie's inability to describe the perpetrator shortly after the crime diminishes the extent to which one could conclude that she had ample opportunity to view the perpetrators or was attentive during the event. The District Court erred by failing to account for the manner in which McKenzie's initial descriptive failure affects those other *Biggers* factors.

Second, the District Court erred by failing to weigh the corrupting effect of the suggestive confrontation against the *Biggers* factors, especially the factor addressing the certainty with which McKenzie later identified Garvey. Both Supreme Court and Second Circuit precedent expressly require this additional analytical step, yet the District Court simply did not undertake it. *See Brathwaite*, 432 U.S. at 114 ("Against these [*Biggers*] factors is to be weighed the corrupting effect of the suggestive identification itself."); *see also id.* at 116; *Solomon v. Smith*, 645 F.2d 1179, 1185 (2d Cir. 1981) ("[A]s *Brathwaite* makes clear, the constitutional assessment of reliability requires a balancing of the factors outlined in *Biggers*, against the degree of

43

suggestiveness in the impermissible procedures.") (internal citation omitted).

Here, an extraordinary "degree of suggestiveness," *see* *Solomon*, 645 F.2d at 1185, permeated McKenzie's identification; one might go so far as to call these circumstances accusatory rather than merely suggestive. When McKenzie's sister came to McKenzie's door a few hours after the burglary, she told McKenzie, "they caught a guy." McKenzie and her sister then went to Gaines's house. When they arrived, Gaines was "holding" Garvey. Further, an agitated crowd had surrounded Garvey. Gaines testified that he apprehended Garvey after Garvey entered Gaines's backyard in an attempt to remove property that Garvery had placed there "last night," specifically, the video compressor. At the moment McKenzie first encountered Garvey, her stolen property quite literally lie at his feet. By failing expressly to weigh the degree of suggestiveness against the other *Biggers* factors – especially in light of these rather extreme circumstances – the District Court erred.

Correcting for the two errors identified above, it is apparent that there is no independent basis of reliability for McKenzie's identification. As I have said, her inability to give but the most rudimentary and generic description of the perpetrator, even shortly after the crime, virtually precludes one from concluding that she had a reliable opportunity to view him or was attentive to any reliable degree. Likewise, the

certainty of her later identification owes to the remarkably suggestive circumstances under which she encountered Garvey. Accordingly, both the Appellate Division and the District Court erroneously concluded that McKenzie's identification was reasonably reliable.

I pause briefly to note that, as this analysis demonstrates, the District Court was mistaken in believing that if it allowed McKenzie's initial descriptive failure to affect the other *Biggers* factors, then "the ability of a witness to describe a suspect to the police prior to the identification would be dispositive" by itself. Instead, it is the combination of three relatively rare facts that is dispositive here: (1) McKenzie's almost total failure to describe the perpetrator to the police (2) despite the fact that she was interviewed shortly after the burglary, plus (3) the severely suggestive circumstances that prevailed during her later identification. If any of those facts were tempered, the outcome might be different.

As things stand, however, the next question is whether the Appellate Division's judgment is more than merely erroneous, such that it constitutes an unreasonable application of Supreme Court law within the meaning of § 2254. Pursuant to the three factors we set forth in *Cotto*, I believe that it is. The first factor – whether there exists a "lack of any precedent supporting [the state court's] result in the Supreme Court or any federal court of appeals" – is somewhat difficult to evaluate because cases

45

such as this one are very fact-specific. *Cotto*, 331 F.3d at 251. Nevertheless, as explained above, our precedent strongly indicates that when a witness fails to describe a perpetrator shortly after the crime, and then later identifies someone under highly suggestive circumstances, the identification testimony generally should be suppressed. *Raheem*, 257 F.3d 122; *Dickerson*, 692 F.2d 238. This factor therefore somewhat favors a finding of objective unreasonableness.

The second factor – whether the state court has given "specific reasons" for its conclusion – strongly favors a finding of objective unreasonableness, as neither the state trial court nor the Appellate Division gave a single reason why McKenzie's identification was reliable. *Id.* The third factor asks whether the state court's conclusion is consistent with the purpose behind the rule. The Supreme Court has explained that the purpose of the *Biggers* analysis is to avoid the "primary evil" of "a very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 199 (internal quotation marks omitted). The state court's conclusion in this case – that "the identification was sufficiently reliable under all the circumstances" – is inconsistent with the goal of avoiding misidentification. Allowing testimony about identifications, such as McKenzie's, that occur after an almost total failure of recollection and arise from highly suggestive circumstances, only increases the chances that a misidentification will occur. This factor also

46

weighs in favor of a finding of objective unreasonableness. On balance, therefore, I conclude that the Appellate Division's judgment is an unreasonable application of clearly established Supreme Court law.

For the above reasons, I would vacate the judgment of the District Court. I would remand for consideration of the only remaining question in this case, and one that the District Court did not reach given its conclusion that no constitutional error occurred: whether the error I have identified had a "substantial and injurious effect or influence in determining the jury's verdict." *Raheem*, 257 F.3d at 142 (internal quotation marks omitted); *see also Wray v. Johnson*, 202 F.3d 515, 525 (2d Cir. 2000).